**In re ESTATE OF George MAPES.**

**William L. CROOKS, et al., Appellants,**

v.

**James T. HOLCOMB, et al.,**
**Respondents.**

**No. WD 41527.**

Missouri Court of Appeals,
Western District.

Feb. 27, 1990.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
April 24, 1990.

Application to Transfer Denied
June 19, 1990.

Charles A. Powell, Macon, for appellants.

R. Max Humphreys, Jefferson City, for respondents.

Before NUGENT, C.J., and FENNER, J., and WASSERSTROM, Senior Judge.

WASSERSTROM, Senior Judge.

This case has accumulated a considerable history. It began in October, 1980, with the filing of the will of George Mapes, deceased, in Grundy County and the appointment as Executor, James T. Holcomb, the attorney who drew the will and who was named therein as Executor. In August, 1982, some of the heirs learned that certain certificates of deposit, bank accounts and shares of stock totaling approximately $125,000 had been left in the joint names of the deceased and James T. Holcomb and his brother John L. Holcomb, some of those items being in joint names of deceased with James, some in joint names of the deceased and John, and some in the name of the deceased together with both of the two Holcomb brothers.

On September 29, 1982, the plaintiff heirs filed a petition in the Circuit Court of Grundy County, Probate Division, seeking the removal of James T. Holcomb as Executor. On October 18, 1982, they further filed a three count petition in the Grundy County Circuit Court, the first count of which sought to bring into the estate the assets in joint names just mentioned. The Grundy County Circuit Court, Probate Division, heard and denied the petition for removal of James Holcomb as Executor. That ruling was appealed to this court which reversed and ordered removal in an opinion reported in 681 S.W.2d 476 (Mapes I).

With respect to the three count petition, the Grundy County Circuit Court transferred Count I for trial to Davies County, and the latter court in turn transferred that count for trial to Livingston County. The Grundy County court retained jurisdiction over Counts II and III which still remain pending in the Grundy County Circuit Court.

Count I proceeded to trial in the Livingston County Circuit Court before a jury, and at the close of the evidence the court directed a verdict in favor of both defendants. Plaintiffs appealed that judgment, and the Missouri Supreme Court reversed and remanded the case for a new trial in an opinion reported in 738 S.W.2d 853 (Mapes II).

Pursuant to that remand, the case was retried in Livingston County in October, 1988. At the close of all the evidence, the trial court dismissed the case against John Holcomb. The case was then submitted to the jury as against James Holcomb, and the jury returned a verdict for the defendant. Plaintiffs now appeal from those rulings (Mapes III).

Plaintiffs urge six points on this appeal, each of which will be discussed in order.

## I.

### The Dismissal of John Holcomb

Plaintiffs have built their case upon the rule that, where a gift of property is made by a client to his attorney during the course of the attorney-client relationship, a rebuttable presumption of fraud and undue influence is established. The Supreme Court stated in Mapes II:

> The record reveals some evidence of a continuing attorney-client relationship between George Mapes and James Holcomb during 1980, the year of Mapes' death, but does not clearly disclose when the joint accounts were established.

The Supreme Court found it unnecessary to decide whether the plaintiffs presented sufficient evidence to establish a presumption of fraud and undue influence, which would take them to the jury, because the trial court erroneously denied plaintiffs leave to reopen their case for the presentation of additional evidence.

On retrial, plaintiffs continued to rely upon the presumption of fraud and undue influence. At the close of the evidence, on John Holcomb's motion to dismiss, the

court pointed out that of the two defendant brothers, only James Holcomb was an attorney. He ruled that the presumption could not apply to the non-attorney defendant John Holcomb, and that there was no evidence of any specific acts of fraud or undue influence by John Holcomb.

In answer to that, counsel for plaintiffs directed the court's attention to the following statement by the Supreme Court in *Mapes II:*

> In this case, decedent Mapes established several joint accounts for the benefits of the brothers Holcomb. These transfers, if made during the course of an attorney-client relationship between Mapes and James Holcomb, were presumptively fraudulent.

With respect to that statement by the Supreme Court, the trial court opined that the inclusion of John Holcomb in the quoted statement "must have been inadvertent."

■ The quoted portion of the Supreme Court opinion in Mapes II may indeed have been inadvertent; but if so, it is only the Supreme Court which can now so declare. The opinion in Mapes II has become the law of the case and is absolutely binding upon the trial court upon remand. *Enyeart v. Shelter Mutual Ins. Co.,* 784 S.W.2d 205 (Mo.App.1989); *Davis v. J.C. Nichols Company,* 761 S.W.2d 735, 737 (Mo.App.1988); *State ex rel. Curtis v. Broaddus,* 238 Mo. 189, 142 S.W. 340, 342 (Mo.1911).

However, the error of the trial court in disregarding a portion of Mapes II is harmless, because the transfers to John Holcomb were valid unless the jury found that those transfers were the result of fraud or undue influence practiced by James Holcomb. The jury has found to the contrary.

■ Realizing this vulnerability in their argument, plaintiffs contend that the "unexplained disappearance of one of the defendants, claimed joint donees, could not have failed to confuse the jury and to denigrate, in the minds and consideration of the jury, the merit of the plaintiffs' claim against the remaining joint claimant." That contention is unpersuasive. If anything, the dismissal of John Holcomb but not James Holcomb, served to emphasize the very special duty owed by a lawyer-donee as compared to a layman-donee.

Plaintiffs' Point I is denied.

## II.

*Propriety of Instructions 7, 9 and 10*

Instruction No. 7 given to the jury was as follows:

> Your verdict must be for defendant if you believe George Mapes made the bank accounts, stock and certificates of deposit joint with the intent to make a gift to defendant not as a result of fraud or undue influence, and
>
> The creation of the joint ownership by George Mapes with defendant was fair and equitable in every respect.

■ Plaintiffs contend that this instruction erroneously failed to negative the client-attorney relationship or the presumption of fraud in client-attorney gifts to attorneys. This argument overlooks the fact that the presumption disappears when evidence is introduced, after which the evidence supporting the presumption and evidence to the contrary are to be submitted to the jury for determination. *Simpson v. Blackburn,* 414 S.W.2d 795 (Mo.App.1967). Moreover, although it was probably unnecessary to do so, instruction No. 4 did tell the jury: "When a gift of money or property is made by a client to his attorney during the course of the attorney-client relationship it is considered presumptively fraudulent, and the burden of proof is upon the attorney to cause you to believe by clear and convincing evidence that the transaction was fair and equitable in every respect."

■ Plaintiffs also argue that instruction No. 7 erroneously failed to number the two elements of the converse being submitted, and that therefore the second paragraph of the instruction appears to state rather than to require the jury to find that the joint ownership was fair and equitable in every respect. The failure to number these paragraphs was in the nature of a stenographic error. The two paragraphs

are connected with the conjunctive "and", thereby requiring the jury to find affirmatively with respect to both paragraphs of the instruction. This instruction was properly understandable by a jury of ordinarily intelligent laymen and is therefore not to be condemned as confusing. *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137 (Mo.App.1989); *Brickner v. Normandy Osteopathic Hospital, Inc.*, 746 S.W.2d 108 (Mo.App.1988); *Breshears v. Union Electric Co., Inc.*, 373 S.W.2d 948, 954 (Mo. banc 1964).

■ Instruction No. 9 sets forth a definition of "fraud", and instruction No. 10 defines the term "undue influence." Plaintiffs argue that giving these definitions misled the jury into disregarding the presumption of fraud in a client-attorney relationship and led the jury to believe that they could not find for plaintiffs unless they believed that James Holcomb had committed "overt" fraud. That argument overlooks the fact that the presumption disappears once evidence has been introduced, as already pointed out above. Again, the jury was fully advised as to the presumption in question under instruction No. 4.

■ The terms fraud and undue influence appeared in instruction No. 7 and the term fraudulent appeared in instruction No. 4. Because of the use of those terms in other instructions, it was proper to also give the jury the benefit of definitions. *Knight v. Glenn Falls Insurance Co.*, 20 S.W.2d ·941 (Mo.App.1929). In any event, the decision to submit a definitional instruction is a matter within the sound discretion of the trial court. *DeWitt v. American Family Mutual Ins. Co.*, 667 S.W.2d 700, 711 (Mo. banc 1984); *Christensen v. R.D. Sell Construction Co., Inc.*, 774 S.W.2d 535 (Mo.App.1989); *Massey–Ferguson Credit Corp. v. Black, supra.*

Plaintiffs' Point II is denied.

### III.

*Propriety of Instruction No. 8*

Instruction No. 8 reads:

Attorney-client relationship as used in these instructions means that on the dates of the creation of the joint ownerships mentioned in evidence George Mapes was engaging defendant James T. Holcomb for the purpose of obtaining legal services.

■ Plaintiffs complain of this instruction that the attorney-client relationship is one commonly engaged in and does not call for instructional definition. The decision to submit a definitional instruction is a matter within the sound discretion of the trial court. *DeWitt v. American Family Mutual Insurance Company, supra; Christensen v. R.D. Sell Construction Co., Inc., supra; Massey–Ferguson Credit Corp. v. Black, supra.* The giving of this instructional definition is therefore not error.

■ Plaintiffs urge with even more vigor that instruction No. 8 erred in telling the jury that the attorney-client relationship between Mapes and James Holcomb had to exist "on the dates of the creation of the joint ownerships mentioned in evidence." Plaintiffs insist that instead of instruction No. 8 the court should have given plaintiffs requested instructions A and D under which they would have been instructed that the attorney-client relationship had to exist "during the times" when the joint accounts were created. Plaintiffs make the point that under their theory of the case an attorney-client relationship was created in 1977 when John Holcomb wrote the first Mapes Will and continued uninterruptedly thereafter to the date when James Holcomb wrote the last codicil to the Mapes will, which was executed very shortly before Mapes' death.

Instruction No. 8 is not erroneous. It follows the intention of the Mapes II opinion, where the Supreme Court said:

Plaintiff sought to examine defendant James Holcomb and admit his answers to interrogatories for the purpose of establishing that *an attorney-client relationship existed between Mapes and Holcomb at the time the joint deposits were created* (emphasis added).

The instruction also accords with the general statement of the rule as it appears in

7A C.J.S., Attorney and Client, Section 242, page 443: "It [the rule on presumptive fraud] is not applicable, however, where the relationship of attorney and client does not exist between the parties at the time of the transaction * * * *"

■ In any event, little difference can be perceived between "on the dates of the creation of the joint ownerships" as against "during the times when the joint accounts * * * were created." If the relationship existed during the times when the joint accounts were created, then it follows that the relationship must have existed on the dates when the accounts were created. Significantly, counsel for plaintiffs did argue to the jury in his closing summation, without objection, that the attorney-client relationship existed continuously from 1977 until the date of Mapes' death. It is proper to look at the oral argument in order to determine whether a given instruction had any prejudicial effect. *Forinash v. Daugherty*, 697 S.W.2d 294 (Mo.App.1985). Instruction No. 8 was not only free from error, but it resulted in no prejudice to plaintiffs.

Plaintiffs' Point III is denied.

## IV.

### *Propriety of Instructions 4, 5 and 6*

The plaintiffs object to instruction Nos. 4, 5 and 6 on the ground that each of them contained language requiring the attorney-client relationship to be proved to exist "on the dates" when the joint properties were created rather than "during the times" when the joint ownerships were created. This matter has already been fully discussed under III of this opinion.

Plaintiffs' Point IV is denied.

## V.

### *Testimony of witness Kirkman*

Defendants called as their witness Althea Lee Kirkman, a retired probate clerk and deputy magistrate clerk, who testified that she was present with Judge Farr when George Mapes stated he was planning to divorce and that he wanted to leave the bulk of his estate to Dr. James Holcomb and his two sons John Holcomb and James

T. Holcomb. The witness placed this conversation between 1963 and 1969. Plaintiffs objected to this testimony on the ground that it was too remote and was immaterial because of the expected divorce.

■ Statements of this general nature relating to the intentions of the declarant are admissible. *In Re Harlow's Estate*, 239 Mo.App. 607, 192 S.W.2d 5 (1945). The remoteness in time and the nature of the circumstances may make this evidence of "low grade", but the evidence is nevertheless admissible with "a great deal of caution." *Roberts v. Clevenger*, 225 S.W.2d 728 (Mo.1950). The weight, if any, to be given to this evidence was for consideration by the jury.

Plaintiffs' Point V is denied.

## VI.

### *The Jury's Verdict as being Against the Evidence*

In their Point VI, plaintiffs contend that the jury's verdict was "against the evidence" and "against the evidence on the settled law of Missouri." Plaintiffs' case is predicated on a presumption of fraud arising in connection with gifts by the decedent to attorney James Holcomb and his brother. Plaintiffs claim that an attorney-client relationship existed between decedent and James Holcomb based on evidence that James Holcomb drew a will for decedent in 1977, drew some papers in connection with a real estate transaction sometime later, prepared another will in 1980, and prepared a codicil shortly before decedent's death. There was no evidence of any business or legal transaction between James Holcomb and the decedent on or near the dates of the various gifts.

■ Defendants presented evidence tending to show that the decedent's motivation in making these gifts was solely due to the close family relationship between the decedent as a grand uncle and the Holcomb brothers as grand-nephews. Defendants denied any action on their part to induce the decedent to make these transfers and they denied knowing about the transfers until after they were made.

The jury could reasonably have found for the defendants on either of the following

bases: 1. They could refuse to infer that there was a continuing attorney-client relationship from 1977 through the date of decedent's death, as contended for by plaintiffs and as to which plaintiffs had the burden of proof; or 2. they could have believed that the transfers to the brothers Holcomb were fair and equitable in every respect.

The jury performed its function and found against plaintiffs. The trial court had authority to set aside that verdict if on plaintiffs' motion for a new trial it had found the verdict to be against the weight of the evidence, but the trial court declined to do so. With the denial of a new trial by the trial court, the question as to the weight of the evidence came to an end. This court has no power to consider and weigh the evidence, as now in effect is being requested by plaintiffs. See the myriad of cases collected in 3 West's Missouri Digest Second, Appeal and Error, key No. 1003(2) and (3).

The plaintiffs' Point VI is denied.

The judgment is affirmed, and the case is remanded to the Circuit Court of Grundy County for disposition of counts II and III.

All concur.